# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **I.G.**

**No. 17-0378** (Webster County 16-JA-76)

**FILED**

**October 23, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother K.P., by counsel Steven B. Nanners, appeals the Circuit Court of Webster County's March 24, 2017, order terminating her parental rights to I.G.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Mary Elizabeth Snead, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her an improvement period and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2016, the DHHR filed an abuse and neglect petition in Nicholas County against petitioner alleging that she posted on social media, "I need someone I can sign my custody over too. Like #100 right now who's stable and has a job, a car, etc." The DHHR also alleged that petitioner reported to a Child Protective Services ("CPS") worker that she was physically and mentally unable to care for the child. Further, the DHHR alleged that the CPS worker found the child in the home of a registered sex offender, i.e. the home of the child's grandmother and her husband. The case was transferred to Webster County because it is the county in which petitioner resided.[2]

The DHHR filed an amended petition that added the child's father as a respondent. In the amended petition, the DHHR alleged that petitioner was involved in a previous abuse and

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]The petition was originally filed in Nicholas County because it was the county in which the grandmother lived and where the child was removed.

1

neglect case that was filed in July of 2014 in Nicholas County. In that case, petitioner was adjudicated as an abusing parent based on her homelessness, refusal of placement in a homeless shelter, and failure to provide adequate food, clothing, and shelter for her child. She was granted a post-adjudicatory improvement period, which she completed. The case was dismissed in December of 2015. The DHHR also alleged that petitioner underwent a psychological evaluation in 2014 and was diagnosed with borderline personality disorder and unspecified depressive disorder. The DHHR further alleged that during the current proceedings, when the CPS worker went to inspect petitioner's home, she found that the ceiling was collapsing in several areas; the roof was leaking; trash was overflowing in the kitchen; there was a hole in the floor near the front door; there were bags of trash, a mattress, old furniture, and clothing stacked outside the home; the aluminum underpinning was hanging loose and presented a dangerous situation for small children; and there were exposed wires and electrical socket boxes in the wall in the hallway. Furthermore, the DHHR alleged that petitioner told the CPS worker that her current boyfriend had recently shoved a bar of soap in the child's mouth, causing her mouth to bleed. Petitioner also told the CPS worker that the child's father was in prison in Maryland.

In October of 2016, the circuit court held a preliminary hearing in which it took testimony from CPS workers and petitioner. The circuit court found that petitioner's home was neither fit nor suitable for the child and noted its concern about petitioner's physical and emotional wellbeing. The circuit court ordered petitioner to undergo a psychological examination. Petitioner was granted visitation with the child conditioned upon her remaining drug and alcohol free. Petitioner was also ordered to cease contact with her boyfriend and her mother's husband.

In November of 2016, the circuit court held an adjudicatory hearing in which it took judicial notice of all prior testimony in the case. Based on the fact that petitioner did not have a suitable home for the child and because she failed to protect the child from her boyfriend, petitioner was adjudicated as an abusing parent. The circuit court ordered the DHHR to arrange a psychological evaluation for petitioner. In January of 2017, petitioner filed a motion for a post-adjudicatory improvement period.

In March of 2017, the circuit court held a dispositional hearing wherein petitioner's evaluating psychiatrist testified by telephone. The psychiatrist testified that petitioner "is not a good candidate to parent and it is not recommended that she be allowed to regain custody of her child as it is highly likely that she will return to her previous behaviors . . . ." The psychiatrist further testified that petitioner resisted participating in treatment and had a poor attitude during evaluations. Petitioner testified that she did not have a job, that she received $195 in food stamps per month, that she earned money for utilities by making "primitive stuff" that she sold online, and that her mother and grandmother helped her pay for her car insurance. Petitioner denied a continued relationship with her boyfriend. However, her social media posts indicated that they were still involved. A service provider testified that petitioner cooperated with services sporadically and that she "complies when she wants to comply." The service provider testified that she often experienced difficulty locating petitioner. A CPS worker testified that the DHHR recommended that petitioner's parental rights to the child be terminated as the same would be in the child's best interest. The circuit court found that petitioner continued a relationship with her boyfriend, had no appropriate home for the child, and was not employed. The circuit court

further found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that there was no less-restrictive alternative available than termination of petitioner's parental rights. The circuit court ultimately terminated petitioner's parental rights in its March 24, 2017, order.[3] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the circuit court's findings below.

First, petitioner argues that she should have been granted a post-adjudicatory improvement period. To support her argument, petitioner asserts that she provided clear and convincing proof that she would fully comply with the terms and conditions of an improvement period. We disagree. In order to obtain a post-adjudicatory improvement period, West Virginia Code § 49-4-610(2)(B) requires that the parent "demonstrates, by clear and convincing evidence, that [the parent] is likely to fully participate in an improvement period . . . ." Further, we have often noted that the decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re: M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) (holding that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period"); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) (holding that "[i]t is within the court's discretion to grant an improvement period within the applicable statutory requirements").

Here, petitioner failed to prove by clear and convincing evidence that she was likely to substantially comply with the terms and conditions of a post-adjudicatory improvement period because she participated in services sporadically and failed to remain in contact with providers.

---

[3]Petitioner's parental rights to the child were terminated below. The father is currently incarcerated and according to the DHHR and the guardian, his parental rights were terminated. According to the guardian and the DHHR, the child is placed in a foster home with a permanency plan of adoption in that home.

Also, CPS's inspection of petitioner's home indicated that it was unsafe and unfit for the child. The psychiatrist that conducted petitioner's psychological evaluation concluded that petitioner resisted participating in treatment and had a poor attitude during evaluations. Further, petitioner did not have a job and continued to have a relationship with her boyfriend, despite an order from the circuit court to not associate with him because of his maltreatment of the child. Based on this evidence, petitioner did not prove by clear and convincing evidence that she was likely to substantially comply with the terms and conditions of a post-adjudicatory improvement period and, therefore, the circuit court did not err in denying petitioner's motion for a post-adjudicatory improvement period.

Next, petitioner argues that the circuit court erred in terminating her parental rights. Petitioner argues that the circuit court should have considered a less-restrictive alternative. We disagree. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are directed to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) provides that no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected exists when "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]"

Further, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Here, it is clear that there was no reasonable likelihood that petitioner could substantially corrected the conditions of abuse or neglect in the near future. Petitioner was involved in a prior abuse and neglect case in Nicholas County because she could not provide proper shelter for her child. During the current proceedings, CPS found petitioner's home remained unfit. Petitioner therefore did not remedy the conditions of abuse and neglect from the prior case. Further, as discussed above, petitioner inconsistently participated in services and had a poor attitude during evaluations Additionally, she was unemployed and continued a relationship with her boyfriend, despite the circuit court's order directing her to cease contact with him. For these reasons, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 24, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  October 23, 2017


**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker